NYMAN, Executrix, Appellant, v. NYMAN, Respondent.

*September 9—October 7, 1958.*

For the appellant there were briefs and oral argument by *John P. Derning* of Brodhead.

For the respondent there was a brief by *F. Earl Lamboley* of Monroe, and *Thronson, Roethe & Agnew* of Janesville, and oral argument by *John T. Roethe*.

BROWN, J.    The Goecks farm described in the agreement had been purchased by the senior Nymans on October 21, 1942, who took title as joint tenants. Nora Nyman claims the property as surviving joint tenant. At the time of the purchase the senior Nymans borrowed the purchase price from a Monroe bank giving a purchase-money mortgage to the bank upon this farm and another one. There is no evidence that the junior Nymans participated in any way in these transactions, though the agreement acknowledges that the purchase was made at their request and on their behalf.

Broadly interpreted, the agreement is a promise by the elder Nymans to convey the farm to their son and his wife if and when the profits from the operation of the farm shall reimburse the purchasers for their expenditures. LaVerne and Lesetta Nyman make no promise to pay LaVerne's parents for the farm and defendant's brief submits that there is no consideration for the promises to convey which Nora and her husband made in the agreement. Nevertheless we find there that the instrument is under seal, which imports consideration, consideration of one dollar is stated, and LaVerne and Lesetta promised to hold the parents harmless for losses or liabilities they might incur and to pay interest on moneys advanced by the parents. We cannot dispose of the agreement as being without consideration.

However, we do think that there was a failure on the part of LaVerne and Lesetta to perform any of the obligations which were theirs or reasonably to be expected of them by virtue of the agreement, all to an extent which convinces us that they had abandoned it.

When the agreement was executed December 15, 1942, the elder Nymans were already the owners of the farm as joint tenants. They continued to operate it, and to receive all the income. They made no demands upon their son and his wife in any way related to this agreement. On their part the latter made no inquiries concerning what progress, if any, the farm was making in paying for itself. If principal payments were made out of farm profits the agreement provided that those should be considered income of LaVerne and his wife, but although they were obligated to report their income for taxation they never inquired if there was income from this source.

One paragraph of the agreement declares:

"It is further hereby agreed by second parties that they hereby obligate themselves to pay to The First National Bank

of Monroe, Monroe, Wisconsin, the institution from which first parties will borrow the money to finance this transaction, all moneys borrowed by first parties in connection with this transaction."

As shown by the second paragraph of the agreement the parties well knew that the elder Nymans had purchased the farm some six weeks before. The paragraph just quoted states that the elders *will borrow* and the second parties obligate themselves to repay the loan to the bank. No such further, future, loan was obtained by first parties nor have the second parties entered into any repayment obligation with the bank nor have they reimbursed their parents otherwise.

The only mortgage of which there is evidence is the one given to the bank by R. J. and Nora Nyman on October 21, 1942, the day when the Goecks' deed was delivered. This was satisfied on April 18, 1945, and satisfaction recorded. Nora Nyman testified that this mortgage was paid with other funds and not derived from the operation of the farm.

R. J. Nyman died February 7, 1955, and Nora was appointed administratrix of his estate with the will annexed. As such, on March 1, 1957, she filed an inventory and appraisal in which she scheduled this farm as owned by her husband and herself in joint tenancy. No other interest in anyone was mentioned. The combined interests of the joint tenants were appraised at $20,000. LaVerne Nyman had notice of the probate proceedings but neither he nor his wife asserted any interest in the farm and final judgment was entered in the matter of the estate by the Hon. MARSHALL L. PETERSON, county judge, August 8, 1955. In this, too, the farm was described as joint-tenancy property with no mention of other interests and it was assigned to Nora, surviving joint tenant, as of the date of her husband's death.

A witness, LaVerne's brother, testified that he once asked for some help in work on the Goecks farm and LaVerne refused and said he was not interested in that farm.

LaVerne Nyman died suddenly July 4, 1955. Lesetta Nyman was appointed executrix of his will on August 2, 1955. It is worthy of note that the agreement of December 15, 1942, was not recorded until August 24, 1955. As this action is between original parties to the agreement and no rights of third parties are involved the failure to record is unimportant, except that ordinary caution for protection against claims by third parties would impel LaVerne and his wife to record promptly a document which they considered important to them. The failure to record for so long a time argues that whatever their original intention was, it had been abandoned.

This history of more than thirteen years of indifference on the part of the LaVerne Nymans to the affairs of the farm convinces us that they truly had abandoned whatever interest in the property which the written agreement may originally have given them. The two male parties to the transaction are dead. Their lips are sealed. Records and recollections over so many years bid fair to be incomplete and untrustworthy. Too much uncertainty is inherent in this situation. Equity had better keep her hands off and will not decree either specific performance or an accounting.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.